Next case on today's docket is the case of In Gray Marriage of Caldwell. And we have, let's see, we have Mr. Farringham and we have Mr. Stiger. You may proceed Mr. Farringham. This case is about the difference between a gift and a contribution when it comes to dividing marital property during a divorce. The legislature contemplated that not every contribution to a marital estate would be a gift and they provided us with a framework by which that could be determined and how to divide it. In this case in particular it's about one parcel of property and it's an estate that was owned by Kelly, the husband, who I represent. He had it acquired in 1991, 15 years before he ever married the wife in this case. And actually after having it for 10 years in 2001, the house itself was destroyed in a fire and there was an insurance claim on it. In the divorce from his first wife he purchased her interest in it and it was in his name alone. He received a contribution from the insurance to rebuild the house but he didn't do it right away. In 2006 after he married Lori, the wife in this case, about three months later the work began on constructing a house. In order to finance that construction his mortgage lender said you have to add your wife's name to the house and he did it to finance it. He uses a down payment, the money he got from the casualty claim earlier. The land was already his and at the end of the case the council had agreed on a disposition of all assets except this. And we agreed to submit arguments in which there really weren't facts in dispute as far as the acquisition of the property, who had it in the beginning. That was the husband's at all times. In this case though the court determined that it was the presumption of gift had not been rebutted. As a result decided that it would not use the factors provided in the statute for reimbursement. So our concern is the husband did not get reimbursement for the contribution made from a non-marital estate to a marital estate. And that had he gotten that it makes a difference of about $50,000 which was really the most significant asset of the estate. When looking at it the court had available to it information that supports this not being engaged. And the first, the dominant intent, the circumstances surrounding having her name on it wasn't here dear I want to have your name on it. It was here dear you need to sign this and we need to get financing on it and that's why it happened. So it wasn't a matter of I want to make a gift to you of all this property I had before. It's we're building a house we need to have. The second is that one of the considerations we should review whether it's a gift or not is whether or not it's a substantial part of the estate. In this case their marriage was only about three years in length. They stayed together approximately three years. She moved out. That is the most substantial asset that's involved. And the significant contribution by the husband was that he had the land, he had the house, he paid the down payment, made all the payments. She did build a bull barn on the property. She had horses. And she paid approximately $20,000 for a bull barn. But that was to serve her and her purpose. But that's her contribution. Other than that she didn't manage the property. She did not pay for insurance, mortgage payments. Even after she left she had nothing to do with it. Did the payments get made from a joint account? At one point, yes. At one point they made from a joint account. After a certain point those contributions were only made by my client. The fact that he paid them from wages is a sign that it's a contribution by the marital estate. Because even though he made it from a separate account, if they're from his wages we can see that that's a contribution by marital estate. And didn't the wife have some money that she brought into the marriage? The money she brought into the marriage was applied towards the bull barn. She had about $20,000. It was built for something to accommodate her on the property. So she did contribute. What about contributions to the joint account? Did she make any contributions to the joint account? I'm not aware that she did or didn't. I don't think it would play as a factor. And for us, for our point of view, that doesn't make the difference in the gift versus the contribution argument. If it's made during the marriage, she put money in that account, then that would go to the division of property after the reimbursement. And our concern is that reimbursement didn't take place first. It's the first step. And it was because of that gift versus contribution argument. I didn't have any further questions. Mr. Stiger says that there was a stipulation as to the property being part of marital estate. Yes, but what happened is we submitted an agreed order. And when we had the agreed order, Judge Levy had us in court and said, Are you stipulating that it's marital property? And she hand wrote in, I think you can see the corner of the order, that it was marital property. That's not the dispute because marital property can be acquired by gift or by contribution from a non-marital estate to a marital estate. So we're saying we're not challenging that characterization that it's marital. We're saying that it had contributions from a non-marital estate from which we should be reimbursed under the provisions of the statute. Wait a second. I thought that seems a little bit at odds with what you just answered earlier. Look, I'm not doing a good job. Let me do a better job. We're saying that you can get property in the marital estate two ways. It can be a gift or it can be a contribution that's not a gift. The legislature provides two reasons for it. There can be contributions made that were not intended to be a gift but intended to acquire something. In which case they provide a mechanism and that's, I'm referring to 750-IL-CS-5-503-C2. When it talks about when one estate of property makes a contribution to another estate of property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding transportation. And it says provided there's such reimbursement, no reimbursement shall be made with respect to, and it showed something's a gift. But don't you have to determine first whether or not it's a marital estate? We agree that the house, the property became marital when it was signed, when the names were put on it, both names were put on it. Even though it was his before, it was a contribution to a marital estate. So it was the contribution. It wasn't a gift to her. The only reason it became that way, except there's another way of arguing. You can say it was never a gift, or you can say it was never a gift and never made part of the estate, or you can say it was never a gift but was a contribution to the marital estate. If it was never a gift and never a contribution, then it should be non-marital property awarded to my client. But if you say, look, it was a contribution because she made a contribution of the pole barn to the property. He should get back his money, she should get back her contribution, and whatever's left over after this reimbursement is done, it can be divided according to the factors of 503. Then don't you only determine contribution if it's determined a non-marital estate? If the contributing estate is a non-marital estate, if it's not a gift, you can get reimbursement. If it's a gift, and you can trace it, and we can trace it, it's easily traceable. Every item of contribution to that estate... If it's not a gift, then it's non-marital. If your client meets his burden of proof showing that it was not intended to be a gift, then isn't it non-marital? It's like transmutation in a way. What happens sometimes, non-marital estates are commingled with a marital estate, and if it's never intended or not intended to be a gift, as long as it's traceable, and we have clear and convincing evidence that it's our burden, if you can trace it, then you can reimburse the non-marital estate from the created marital estate. It's a nightmare for us sometimes when we have to decide what to go through with this, but the legislature has given us this manner of dividing things. And it recognizes the difference, because even in this provision it says... Otherwise it wouldn't reference a gift. If it's not traceable, and it says, or if it was a gift, you can't get reimbursement to the estate. So it really requires two estates, a marital one and a non-marital one, which we have here. Non-marital estate was what my client is saying he contributed, and even though it's a marital estate, he's entitled to reimbursement from it. If it was a gift, things can be a gift to the estate and non-reimbursable. Things can be a gift, not a gift, in non-marital property. So there are different categories that are created, and a lot of it's driven by whether or not they can prove donative intent. Some types of parties will invest in something without the intent of making a gift to the other side, a joint venture of some sort in the marriage, invest in some real estate, and it's not intended to be a gift to the other side, or a business. The placing of the name on the mortgage raises the presumption that it's marital property. I agree. Correct? Yes. So what evidence is there of the donative intent that it'd be purely a gift? Well, that's the only evidence that it's a gift is that the name was on it. Evidence that it was not a gift is provided by some of the case law, which says if you look at it, the circumstances of the contribution to the property, we actually had a similar case here in the bottom case in which, though, that was Rule 23, though, but it was the bottom case here in which the property was given to both husband and wife by the maternal parents, and years passed, years passed, and the maternal mother said, I never intended to give that as a gift to the husband. I meant it just for my daughter. And that was found to be sufficient. Even though it was put in both names, it stayed in both names for years, and only at the time of the divorce did she recant that. But one of the factors to consider, I mean, they were provided to us, I've cited a couple of cases in the marriage of Gatone and Scanlon, that you look at the size of the gift relative to the entire estate. In this case, it just is substantial. I mean, the estate is almost nothing without the house. Who paid the purchase price, made improvements, paid taxes on the property? And then it says, with solely acquired funds, and exercised control of management, and management of the property. Well, my client did that before the marriage, and after the marriage, paid it with marital funds, which would include his wages, but he exercised control of the property, especially after they divorced in the years after she moved out, or before, after when the divorce was filed. When the asset was purchased, one of the factors was purchased, 15 years before he even married the wife, and how they handled their prior financial dealings with each other. So, in this case, had the court relied upon these other factors that are not in dispute, you know, when it was acquired, and how it was done, it's pretty clear it wasn't donative intent, and even the timing of when her name was put on it was exactly what they had to do. The financing, in which my client put down, I believe, $85,000 on the down payment on the property. So, there are a couple ways of interpreting it. We think the only way to properly do it would be to go back and give her a reimbursement on her $20,000, give him a reimbursement on his contribution, and whatever's left, the court can then apply the rest of the 503 factors. So, you're disputing that the $78,000 she got was just too much? $50,000. We think $50,000 is too much in a general sense. She gets the $20,000 back from the pole barn. Is that included in the $78,000? The judge did not describe it that way, because she didn't go through that analysis, because she felt that everything was a gift, she thought. So, the $20,000 she got was a gift, and the rest of the contribution from my client was a gift. So, in that, my client, he paid basically $315,000 from the beginning acquisition of the property, when you count all the payments on the property. That were out of the joint account? The $53,348 were paid out of the joint account. So, he had bought the property, made a down payment from his non-marital proceeds, he made $98,000 down payment on the house. And that's on the construction of it. But he had the property before, which was I think $79,000 without the house. So, the bulk of the money came from him anyway, so we're saying that the court analyzed, giving him benefit of the reimbursement, that it would have made a difference of about $50,000 to him. Thank you. You have the opportunity for rebuttal, Mr. Carrington. Mr. Skiger? If it pleases the court, Justice Chapman, I too am very confused. I'm not sure why we're here. His point, sole point on appeal, is that the court's judgment was against the manifest weight of the evidence in finding that the property was gifted to the marital estate. If the property's not gifted to the marital estate, it's non-marital property. We had a stipulation at trial that it's all marital property. And the difficulty we have, if you look at what was argued at trial and what's being argued here today, we have two different cases. In essence, we're criticizing the judge for not ruling on an issue that wasn't presented to her. Here's what we have factually. At the time Kelly and Lori get married, they worked together at JNF Electric, worked together for a long time. At the time they get married, Kelly owns 17 acres out in the boonies. It's got an old pole barn on it. It's just 17 acres of scrub land just kind of there. For people that like the country, it's very picturesque. They have kids. Kelly had kids. Lori had kids. They decided they wanted to build a new house. So they go out and do the plans, put it together. They build a new house. They go get a construction loan. The construction loan is in both names. They have friends. They're in the building trades. They have friends. They build the house. They put the money into it. They get a discount on the equipment from their employer. And ultimately, once it's constructed, they go to permanent financing, again, on a first mortgage. The stipulated facts are they have two marital joint accounts. One is funded by his earnings, and it's used for the house taxes and so forth. One is funded by her earnings. It's used for everything else, the stuff and such, groceries, utilities, the rest of that. No question that it's all marital. All the payments that are made after the construction of the house are made from marital funds. The argument, we stipulated that it was a marital asset. The only arguments were what's it worth and how is it to be divided. If you look in the appendix to this, in Dave's argument at trial, A23 to A26, he argued two elements under Section 503. One, the contribution of each party, and two, the duration of the marriage. And based upon the disproportionate contribution, he wanted a disproportionate division of the asset once the court determined the value. The court picked one of three appraisals, and that was the value. Lori's argument at trial was, one, that she made substantial contributions from her non-marital estate. She owned a house before the marriage. There's no dispute. She paid $22,000 to put up a nice brand-new pole barn. Whether it was for her benefit or not, it's still on the land that Kelly owns, so obviously it's an improvement to that asset, and the court had to consider it. And second, she put in a lot of extra money. They were motorcycle people, so they finished off the garage with all kinds of nice stuff. And Kelly said based on, or Lori said, rather, based on my contribution, the fact that Kelly makes more than I do, I want an equal division. The court, in ruling on those arguments, which were the arguments that were presented to the court for ruling, looked at three factors. One, the contribution of the parties. Two, the duration of the marriage. And three, the sources of income of the parties. The first two that the judge looked at were the ones that Mr. Farringham argued. That's what he wanted the court to look at. That's what the court looked at. And the court also looked at the difference in income. Based upon the stipulation of the parties that this is a marital asset, the court did what she was asked to do. One, determined what that property was worth, and two, looked at the factors under 503 and determined how it was going to be divided. And in accordance with Mr. Farringham's argument, she divided it disproportionately. She gives Kelly 60% and Lori 40%. I've told my clients over the years many, many times that a judge at a divorce does not do a performance audit of the years of the marriage. We don't go back and go through all the bills and decide, okay, Joe paid 62.3% of the debts and the ex-wife paid the remainder, therefore we're going to divide it up and we're going to go back and do an accounting. It is presumed once we determine that it's a marital asset that it's going to be divided. As Judge Levy said in her order, the favored presumption is that it's going to be divided equally. Based upon the arguments made, she found that there should be a disproportionate division in this case and accordingly split it 60-40. I don't know that there's any way on earth we can argue that of the issues that were presented to the court at trial, that could be any way contrary to the manifest weight of the evidence. On the issue that there was not a proper consideration of the gifts, the reimbursement to the non-marital estate based upon the gift, Judge Levy, on page 2 of her order, specifically found that neither party is entitled to reimbursement of the gifts of non-marital property that he, she made to the property and improvements, 377 Robinson Cemetery Road, inasmuch as no clear and convincing evidence was presented to the court. I think that that covers that issue, but I think the more important thing is that was not an issue that the court was called upon to determine. Based upon the stipulations of the parties, the court was looking at value and division and the court, in accordance with Mr. Farringham's argument at trial, did make a disproportionate division and I think the order should be affirmed. Thank you. Mr. Farringham, do you have a rebuttal? Here's the difference. The court proceeded under Factor D in making this division of property and never addressed Factor C. And what I did argue was reimbursement, I argued, to the court to consider contribution. So the way it should have worked, if we had our way, would the court look under 2 and say, who is entitled to reimbursement under Factor 2? They would find that my client had contributed substantially more. And then the court would proceed to go to D, which is what you do with the marital portion. So, I mean, the non-reimbursed portion, the portion that wasn't reimbursed to the non-marital estate. So it's very clear that it's a protocol to follow C first to see if one property, one estate is entitled to reimbursement, and then go to the next one. Whatever is left that is not reimbursed, how do I divide it? And the court then could have divided it any way the court wanted. Instead, the court went and did a 60-40, which still was a substantial reduction of what my client would have been entitled to had she followed the statutory provision for reimbursement. Thank you. Thank you. Thank you both for your briefs and your argument. We'll take the matter under consideration. Thank you.